IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

DANIEL R. BUCY,                           )
                                          )
                 Plaintiff,               )
                                          )    CIVIL ACTION
v.                                        )
                                          )    No. 12-1237-KHV
CAROLYN W. COLVIN,[1]                     )
Acting Commissioner of Social Security,   )
                                          )
                 Defendant.               )
_____)

**MEMORANDUM AND ORDER**

Daniel R. Bucy appeals the final decision of the Commissioner of Social Security to deny disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 et seq. For reasons set forth below, the Court finds that the final decision of the Commissioner should be reversed and remanded for further proceedings.

**I.    Procedural Background**

On April 18, 2007, plaintiff applied for disability benefits, alleging disability since February 2, 2007. The agency denied plaintiff's application initially and upon reconsideration. Plaintiff requested a hearing. On November 4, 2008, plaintiff appeared with counsel at the hearing before Administrative Law Judge ("ALJ") Alison Brookings. On January 8, 2009, ALJ Brookings found that plaintiff was able to perform jobs that exist in the economy and therefore was not disabled within the meaning of the Act. Doc. #6-2 at 14-26. On May 19, 2009, the Appeals Council of the Social Security Administration denied plaintiff's request for review. Doc. #6-2 at 2-5. Plaintiff then

---

[1]   On February 14, 2013, Carolyn W. Colvin became Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for former Commissioner Michael J. Astrue as defendant in this suit.

filed a civil action in the United States District Court for the District of Kansas challenging the ALJ decision. Bucy v. Astrue, No. 09-1223-SAC.

On August 18, 2010, U.S. District Judge Sam A. Crow remanded the case to the Commissioner for further consideration. Doc. #6-10. Judge Crow found that the ALJ had not properly considered the opinion of treating physician Dr. Paul Davis that plaintiff was disabled. Judge Crow also found that although the Appeals Council considered a letter from Dr. Davis which plaintiff submitted after the ALJ decision, the Council clearly erred by ignoring the medical opinions of Dr. Davis contained in his treatment notes. Doc. # 6-10 at 15.

On September 12, 2011, following a new hearing, ALJ James Harty rendered a new decision and found that plaintiff was not under a "disability" as defined in the Act. Doc. #6-9 at 10-21.

**II.     Facts**

The following is a brief summary of the facts presented to the ALJ.

**A.     Plaintiff's Testimony**

At an administrative hearing on August 23, 2011, plaintiff testified as follows:[2]

In February of 2007, plaintiff injured his right shoulder while performing his job as a sheet metal worker. After plaintiff had surgery to repair his right shoulder, he did not have the physical strength to do sheet metal work. Plaintiff did not do any work for compensation until after his hearing in 2009. At that point, he did some basement remodeling for a few weeks (hanging sheetrock and painting). He could not continue because of pain and swelling in his shoulders.[3]

---

[2] Plaintiff was born on May 18, 1955. He has a high school education.

[3] Plaintiff testified that he took a 15 minute rest break each hour during the days that he did the remodeling.

-2-

Tr. 370-72. Plaintiff currently spends a few hours a day, three days a week, supervising remodeling of a rental property. He sometimes drives one to two hours per day to obtain material for the remodeling job. Tr. 375. Plaintiff mows his own lawn and until recently, he mowed a lawn at a rental property, but he can no longer lift the mower in and out of his truck. Tr. 373-74.

Plaintiff prepares meals for himself and his wife. Tr. 385, 390. He washes dishes, but his shoulders and back "get tight" after about 15 minutes. He then takes a 30 minute break to rest his arms and shoulders. Due to tremors, plaintiff has difficulty writing. During religious meetings, however, he writes more than two pages of notes in 30 to 45 minutes. Tr. 379-380.

Plaintiff becomes fatigued in the afternoon, which he attributes to primidone, which he takes for tremors. He naps for about three hours perhaps twice a week. Tr. 382. He can only stand or walk for a total of two hours a day. Tr. 386. He can not lift anything heavier than five pounds because it hurts his back and "wears out" his arms. Id.

Plaintiff enjoys walking for recreation; on a "good day" he can walk up to five miles in two hours. The next day, however, he might be unable to walk at all. Tr. 384-85.

In October of 2010, plaintiff went on a 10-day hunting trip to Wyoming. He did not hunt, but he cooked for seven or eight other men and slept on the ground in a tent. Tr. 395-397.

**B.    Medical Evidence**

In February of 2007, plaintiff saw Dr. Davis, his family physician, complaining of right shoulder pain after a fall. Tr. 260. Dr. Davis recommended anti-inflammatory medication. Tr. 260. About two weeks later, plaintiff visited Bernard F. Hearon, M.D., an orthopedist. X-rays of plaintiff's right shoulder showed no abnormalities. Tr. 275. Dr. Hearon recommended over-the-counter pain relievers and physical therapy. Tr. 268, 270. In March of 2007, Dr. Hearon

released plaintiff to work with the restriction of no overhead work. Tr. 266.

Also in March of 2007, plaintiff saw Eve L. Henry, M.D., complaining of a tremor in his hands. Tr. 263. Dr. Henry observed a more significant tremor in plaintiff's right hand than in his left. Tr. 264. Dr. Henry prescribed primidone for the tremor. A physical examination showed normal muscle tone with a maintained station and normal walk. Id. At a follow-up visit a few weeks later, plaintiff reported that his tremors improved on medication. Tr. 282. A physical examination revealed that plaintiff had normal strength in upper and lower extremities. Tr. 281.

In May of 2007, plaintiff completed a function report which indicated that he needed help with daily activities such as getting out of bed, doing laundry and cutting meat. He stated that he could not sign his own name due to a loss of motor skills. Tr. 164-67. He reported that he could only lift five pounds, only walk limited distances and could stand for about one hour at a time. He indicated that he was limited to watching television and watching and listening to his grandchildren.

In May of 2007, plaintiff's wife completed a third-party function report. She indicated that plaintiff needed help in dressing and other daily activities due to shoulder pain. Tr. 156-57. She stated that he could prepare simple meals, such as sandwiches or microwaved food and that he drove a car. Tr. 159. She listed his recreational activities as watching television and observing his grandchildren at play. Tr. 160.

In August of 2007, C.A. Parsons, M.D., a state agency medical consultant, reviewed the record evidence. Tr. 294. Dr. Parsons indicated that plaintiff was limited to "light work," and noted that the medical evidence and plaintiff's daily activities suggested that plaintiff's impairments were not as limiting as he alleged. Tr. 286-94. Dr. Parsons indicated that plaintiff could occasionally lift or carry up to 20 pounds and frequently lift or carry up to ten pounds. Tr. 287. Plaintiff could stand

or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. Id. Plaintiff could do no overhead reaching with his right arm. Tr. 289.

In October of 2007, plaintiff had surgery on his right shoulder. Tr. 296, 298. A week after the surgery, plaintiff reported that his shoulder pain had improved. Tr. 296. A physical examination showed good results from surgery. Id. During a physical therapy appointment in November of 2007, plaintiff stated that his shoulder problem generally did not interfere with his daily activities. In December of 2007, plaintiff reported that his shoulder pain continued to improve and that he was pleased with his surgical result. Dr. Hearon released plaintiff to work requiring no overhead work or lifting more than ten pounds on the right side. Tr. 295.

In January of 2008, plaintiff saw Dr. Davis, complaining of a sinus infection. Tr. 311. Dr. Davis wrote that plaintiff "is still having problems with his disability, so he is unable to work at all. . . . Shoulder exam is still consistent with impingement and limitation of motion. The patient has little strength." Id. On March 6, 2008, Dr. Davis saw plaintiff and noted that he "is unable to do any writing [and] is disabled due to the tremor and shoulder problems . . . [and] neurological exam shows persistent essential tremor." Id. at 312.

In April of 2008, plaintiff saw a neurologist, Ty Schwertfeger, M.D., regarding complaints of tremors. Dr. Schwertfeger determined that plaintiff had full motor strength with no resting tremors and slight tremor in his right hand. Tr. 326. Dr. Schwertfeger prescribed primidone for the tremors. Six months later, plaintiff reported that the medication controlled his tremors. Tr. 332. Plaintiff had normal motor strength in all of his extremities with normal reflexes and coordination. Id. He had good rapid alternating movements and fine finger motor skills in both arms and hands and reported that he was "happy with his current status with his tremor." Tr. 333.

In April of 2008, plaintiff saw Dr. Davis for diabetes treatment. Tr. 629. Dr. Davis and his nurse counseled plaintiff on his diet, and Dr. Davis noted that plaintiff had no other concerns. Id.. In July of 2008, plaintiff reported that he walked for exercise and mowed three lawns per week. Tr. 622.

In December of 2008, Dr. Davis wrote a letter in support of plaintiff's application for social security disability. Dr. Davis stated that due to fatigue and tremors, plaintiff could not stand or walk for more than two hours a day. Tr. 334. He stated that plaintiff could not lift more than ten pounds because of shoulder pain and tremors. Id. Dr. Davis indicated that plaintiff could not concentrate and needed to rest in a reclining position for 20 per cent of the day. Dr. Davis stated that plaintiff would miss three or more days of work per month, that he needed to take unscheduled breaks during an eight-hour workday, and that his pain and medication prevented him from performing even a sedentary job. Id.

In January of 2009, plaintiff visited Dr. Davis's nurse for diabetes control. Plaintiff reported that he was remodeling a home and walked in the mall for exercise. In April of 2009, plaintiff returned to see Dr. Davis with no complaints other than shortness of breath and a cramping sensation in his chest. Tr. 618.

In March of 2009, plaintiff saw Dr. Schwertfeger concerning his tremors. Dr. Schwertfeger's examination indicated that plaintiff had mild tremors while holding a coffee mug but could draw concentric circles without irregularity and signed his name legibly. Tr. 334-35. About six months later, plaintiff told Dr. Schwertfeger that his tremors were "not particularly bothersome." Tr. 600. A physical examination revealed normal strength in all extremities with trace tremors in the right arm. Id. In March of 2010, a motor examination revealed minimal

tremors. Tr. 602.

In March of 2010, plaintiff went to Dr. Davis's office for diabetes control. He reported walking almost four miles in less than an hour about three times a week. Tr. 615. About three months later, plaintiff indicated that he kept "active" doing yard work and hanging sheet rock. Tr. 614.

In August of 2010, plaintiff followed up with Dr. Schwertfeger reporting that he had mild tremors. Plaintiff did not request any medication adjustment. Tr. 604. A motor examination showed normal strength and plaintiff wrote legibly; Dr. Schwertfeger detected no tremor with arm extensions or finger-nose-finger testing.

Plaintiff takes Celebrex and/or Meloxicam and/or Mobic (non-steroidal anti-inflammatory pain medications) for shoulder pain. Tr. 335, 612, 621, 639. In the fall of 2010, plaintiff received an injection in his shoulder for pain. Tr. 613.

### III.  **ALJ Findings**

The ALJ found that plaintiff has not engaged in substantial gainful activity since February 2, 2007, the alleged onset date, and that he has severe impairments of obesity and a disorder of the right shoulder. Doc. #6-9 at 12. He determined that plaintiff's impairments do not meet or equal the severity of any listed impairments. Id. at 14.

The ALJ considered the evidence, including medical records, medical opinions and testimony from plaintiff and the vocational expert. He determined that plaintiff's statements regarding the intensity, persistence and limiting effects of his symptoms of pain are not credible. Doc. #6-9 at 12-18. The ALJ determined that the opinions of treating physician Dr. Davis regarding plaintiff's physical limitations were worth little weight. See Doc. #6-9 at 17. The ALJ gave

substantial weight to the opinion of treating physician Dr. Hearon in March of 2007 that plaintiff could return to work with the restriction of no overhead work, but gave little weight to Dr. Hearon's opinion in December of 2007 which restricted plaintiff to lifting no more than ten pounds. Id. at 17-18. The ALJ gave partial weight to the opinion of state agency physician Dr. Parsons, but discounted his opinion that plaintiff was limited to a light exertional level.

The ALJ assessed plaintiff with the RFC to perform medium work as defined in 20 CFR 404.1567(c), except that plaintiff is limited to occasional crawling and must avoid climbing ladders, ropes and scaffolds. He found that plaintiff must avoid overhead reaching with the right dominant upper extremity, workplace conditions such as dangerous machinery and unprotected heights, and exposure to cold temperature extremes and vibration.

Based on the RFC assessed and the testimony of the vocational expert, the ALJ determined that plaintiff is capable of performing past relevant work as a customer service representative. In the alternative, the ALJ determined that considering his education, age and past work experience, plaintiff is able to perform other jobs existing in the economy such as kitchen helper, hand packager and dining room attendant.

## IV. **Standard Of Review**

The Court reviews the Commissioner's decision to determine whether it is "free from legal error and supported by substantial evidence." Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009); see 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Wall, 561 F.3d at 1052 (quoting Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). It requires "more than a scintilla, but less than a preponderance." Wall, 561 F.3d at 1052; Lax, 489 F.3d at 1084. Whether the Commissioner's decision is supported

by substantial evidence is based on the record taken as a whole. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994). Evidence is not substantial if it is "overwhelmed by other evidence in the record or constitutes mere conclusion." Grogan v. Barnhart, 399 F.3d 1257, 1261-62 (10th Cir. 2005). To determine if the decision is supported by substantial evidence, the Court does not reweigh the evidence or retry the case, but meticulously examines the record as a whole, including anything that may detract from the Commissioner's findings. Flaherty v. Astrue, 515 F.3d 1067, 1070 (10th Cir. 2007).

**V.   Analysis**

Plaintiff bears the burden of proving disability under the Social Security Act. Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009). Plaintiff is under a disability only if he can establish that he has a physical or mental impairment which prevents him from engaging in any substantial gainful activity, and which is expected to result in death or to last for a continuous period of at least 12 months. Thompson v. Sullivan, 987 F.2d 1482, 1486 (10th Cir. 1993) (citing 42 U.S.C. § 423(d)). Claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education and work experience, engage in other substantial gainful work existing in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Commissioner uses a five-step sequential process to evaluate disability. 20 C.F.R. § 404.1520; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)). In the first three steps, the Commissioner determines (1) whether claimant has engaged in substantial gainful activity since the alleged onset, (2) whether he has a severe impairment or combination of impairments and (3) whether the severity of any impairment meets or equals the severity of any impairment in the Listing of Impairments. 20 C.F.R., Pt. 404,

Subpt. P, App. 1; see Williams, 844 F.2d at 750-51. If claimant satisfies steps one, two and three, he will automatically be found disabled; if claimant satisfies steps one and two but not three, he must satisfy step four.

At step four, the ALJ must make specific findings of fact at three phases: (1) claimant's RFC, (2) the physical and mental demands of prior jobs or occupations and (3) claimant's ability to return to his past occupation given his RFC. Wilson, 602 F.3d at 1139; Winfrey v. Chater, 92 F.3d 1017, 1023 (10th Cir. 1996). If the claimant satisfies step four, the burden shifts to the Commissioner to establish that the claimant is capable of performing work in the national economy. Jensen v. Barnhart, 436 F.3d 1163, 1168 (10th Cir. 2005); see 20 C.F.R. § 404.1520(a)(5).

Plaintiff argues that the ALJ erred in determining his RFC and in finding that he could perform his past relevant work. As to the RFC assessment, plaintiff asserts that the ALJ failed to properly evaluate the credibility of his assertions of limitations caused by subjective complaints of pain and fatigue. He also contends that the ALJ failed to properly evaluate the medical opinions of treating physicians, Drs. Hearon and Davis, and of state agency medical consultant, Dr. Parsons, and that he failed to properly consider the effects of plaintiff's obesity and non-severe impairments. The Commissioner responds that the ALJ properly evaluated plaintiff's credibility and the medical opinions and appropriately considered plaintiff's obesity and non-severe impairments to determine that plaintiff can perform his past relevant work, or in the alternative, "medium" work with some restrictions.

An ALJ's credibility determinations are generally treated as binding on review. Talley v. Sullivan, 908 F.2d 585, 587 (10th Cir. 1990). "Credibility determinations are peculiarly the province of the finder of fact" and will not be overturned when supported by substantial evidence.

Wilson v. Astrue, 602 F.3d 1136, 1144 (10th Cir. 2010); accord Hackett v. Barnharnt, 395 F.3d 1168, 1173 (10th Cir. 2005). Therefore, in reviewing the ALJ's credibility determinations, the Court will usually defer to the ALJ on matters involving witness credibility. Glass v. Shalala, 43 F.3d 1392, 1395 (10th Cir. 1994).

The Tenth Circuit has explained the analysis for considering subjective testimony regarding symptoms. Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993) (dealing specifically with pain).

> A claimant's subjective allegation of pain is not sufficient in itself to establish disability. Before the ALJ need even consider any subjective evidence of pain, the claimant must first prove by objective medical evidence the existence of a pain-producing impairment that could reasonably be expected to produce the alleged disabling pain. This court has stated: The framework for the proper analysis of Claimant's evidence of pain is set out in Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987). We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

Id. at 1488 (further citations and quotation omitted).

For evaluating symptoms at step three of the framework, courts have set out a non-exhaustive list of factors:

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (quoting Thompson, 987 F.2d at 1489); see Luna, 834 F.2d at 165-66.

The Commissioner has promulgated regulations which suggest additional, somewhat

overlapping factors: daily activities; location, duration, frequency and intensity of symptoms; precipitating and aggravating factors; type, dosage, effectiveness, and side effects of medications taken to relieve symptoms; treatment for symptoms; measures plaintiff has taken to relieve symptoms; and other factors concerning limitations or restrictions resulting from symptoms. 20 C.F.R. §§ 404.1529(c)(3)(i-vii), 416.929(c)(3)(i-vii).

Here, the ALJ set out the Luna framework and found that plaintiff had a medically determinable impairment of the right shoulder that could reasonably be expected to cause symptoms of pain and fatigue. Doc. #6-9 at 17. The ALJ then found that plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible. The ALJ found that plaintiff's allegations of pain and fatigue were inconsistent with the objective medical evidence, and noted that medical records indicate that medications have been relatively effective in controlling his symptoms. The ALJ stated that shoulder pain is managed with over-the-counter medications. The ALJ also concluded that plaintiff's claims of fatigue are based only on self reporting and are not supported by sleep studies.

As to fatigue, the ALJ noted that in May of 2007, plaintiff reported that he needed help to get out of bed and that he could not lift more than five pounds. In contrast, at the administrative hearing in 2011, plaintiff testified that he did some remodeling work, walked up to four miles at a time and mowed lawns. The ALJ stated that plaintiff's claims of fatigue have "waxed and waned from being unable to cut meat on his own to cooking for a hunting party camped out in the wilds of Wyoming." Doc. #6-9 at 18.

As to pain, the ALJ pointed to contradictions between plaintiff's testimony in 2011 – that he has severe right shoulder pain several times a day requiring extended rest periods – and his

reports to medical providers in 2007 that surgery and medication were relatively effective in controlling his shoulder pain. Id. at 16. The Court notes, however, that the ALJ erroneously stated that plaintiff manages his shoulder pain "with over the counter medications, which are generally considered a mild form of pain relief." Id. The record clearly reflects that plaintiff also takes prescription non-steroidal anti-inflammatory medication and has had shots in his shoulder for pain relief. Tr. 335, 612-613, 639. The Court cannot determine how this error may have affected the ALJ's credibility determination. Because plaintiff's use of pain medication is germane to the credibility analysis, the Court must remand the case for the ALJ to undertake a new credibility determination. See Huston v. Bowen, 838 F.2d 1125, 1133 (10th Cir. 1988) (findings as to credibility should be closely and affirmatively linked to substantial evidence).

As noted, plaintiff also asserts that the ALJ erred in weighing the medical opinions of treating physicians Drs. Davis and Hearon and the opinion of the state agency physician, Dr. Parsons. Because the ALJ's credibility determination also impacts his evaluation of the medical opinions, the Court does not review the ALJ's evaluation of medical opinions. On remand, the ALJ shall evaluate the medical opinions in light of his new credibility determination.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is **REVERSED**, and that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g), **REMANDING** the case for further proceedings.

Dated this 24th day of September, 2013, at Kansas City, Kansas.

> s/Kathryn H. Vratil
> Kathryn H. Vratil
> United States District Judge